**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-25680-CV-WILLIAMS**

ALEXANDER NEWTON,

      Plaintiff,

v.

META PLATFORMS, INC., *et al.*,

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss ("***Motion***") (DE 22) filed by Defendant Meta Platforms, Inc. ("***Meta***"). Plaintiff Alexander Newton ("***Mr. Newton***") filed a Response in Opposition (DE 27), and Meta filed a Reply in Support (DE 28). For the reasons stated below, Meta's Motion is **GRANTED.**

### I.   FACTUAL BACKGROUND

On May 20, 2023, Mr. Newton attended an event, known as "Legion Mastermind," in Miami, Florida (the "***Technology Event***") to present his startup companies, DropMagnet and MovieKey, to prospective investors and partners. (DE 1-2 ¶ 11). Plaintiff alleges that event organizers brought Reese Jones ("***Mr. Jones***") onstage as a "Facebook Advisor," and billed him as such in social media advertisements. (*Id.*).  Mr. Newton further avers that Mr. Jones' LinkedIn profile also describes him as a "Facebook Advisor." (*Id.*). According to Mr. Newton, "Meta lodged no objection, disclaimer, or limitation on Jones's use of that title." (*Id.*). Mr. Newton claims that Mr. Jones has routinely presented himself as an "Advisor to

Facebook" at various events over the years.[1] At the Technology Event, attendees referred to Mr. Jones as the "Facebook VIP." (*Id.* ¶ 12). These references apparently convinced Mr. Newton that "[Mr.] Jones was a legitimate Meta representative." (*Id.*).

Over the course of the event, Mr. Newton encountered Mr. Jones and discussed his startups. (*Id.* ¶ 12). During this conversation, Mr. Jones purportedly "stated that he was an official Meta representative with insider knowledge of the company." (*Id.*). Subsequently, Mr. Newton presented a live demo of MovieKey and showed Mr. Jones the page for his movie, *Beautiful Blue Eyes*. (*Id.* ¶ 13). At this point, Mr. Newton "mentioned that he was actively suing Meta" because the company banned advertisements for his movie. (*Id.*). This disclosure allegedly changed Mr. Jones' demeanor, and he began to question Mr. Newton's "motives for releasing the film" and "suggested that [Mr.] Newton was exploiting the Holocaust for personal gain." (*Id.*).[2] Notwithstanding Mr. Jones' demeanor, Mr. Newton "continued the conversation in good faith to explore resolving the Meta ad-ban dispute" because he believed that Mr. Jones was affiliated with Meta. (*Id.*).

---

[1] Mr. Newton does not, however, allege that Meta was even aware of the Technology Event and its advertisements, or that it had knowledge of any of these other purported events that Mr. Jones participated in. Mr. Newton appears to suggest that the public nature of the event, and the fact that Mr. Jones' LinkedIn lists him as a "Facebook Advisor" is sufficient to provide Meta knowledge. *See generally* DE 1-2.

[2] In earshot of other attendees, Mr. Jones proclaimed: "Meta did nothing to damage your film. You just want to make money off the Holocaust. If you really cared about Holocaust education, you'd put the film on YouTube for free." (DE 1-2 ¶ 13).

As the conversation progressed, it escalated.[3] Mr. Jones falsely accused Mr. Newton of advocating for a Holocaust against "woke people." (*Id.* ¶ 17). This outburst drew the attention of other attendees and caused Plaintiff "significant emotional distress." (*Id.*). Mr. Newton, refuting Mr. Jones' accusation, "began recording a brief rebuttal video on his phone." (*Id.* ¶ 19). During this video, Mr. Newton stated: "Everyone deserves life . . . you're lying . . . I'm offering you[4] an olive branch . . . you liar." (*Id.*). While Mr. Newton was recording his "rebuttal" video, Mr. Jones allegedly "lunged toward [Mr.] Newton, forcefully grabbed the phone, and clamped down on [Mr. Newton's] fingers." (*Id.*).[5] Mr. Newton alleges that this act was, "at least in part, to protect Meta's interests." (*Id.* ¶ 17). After Mr. Jones seized his phone, Mr. Newton brought the matter to the attention of a security guard. (*Id.* ¶ 21). Mr. Jones refused to return Mr. Newton's phone and claimed that Mr. Newton illegally recorded him. (*Id.*). Mr. Newton then "sought help from one of the event organizers," who refused to assist. (*Id.*).

Subsequently, Mr. Newton threatened to call the police and his phone was returned. (*Id.* ¶ 23). Mr. Newton alleges that Mr. Jones "held [his] phone for approximately six minutes [and] during [this time] [Mr.] Newton was left without access to transportation, payment methods, or any means of seeking help[.]" (*Id* ¶ 24). Mr. Newton maintains that Mr. Jones'

---

[3] Mr. Jones allegedly proclaimed: "What should we do—fire all the MAGA-nut antisemite Holocaust deniers and the President?" (DE 1-2 ¶ 17). Mr. Newton points to the use of "we" as evidence that Mr. Jones was grouping himself with and "speaking for" Meta. (*Id.*).

[4] Mr. Newton claims that his use of the word "you" was indicative that he was speaking to Meta. (DE 1-2 ¶ 19).

[5] Mr. Newton also stated that Mr. Jones "stood silently throughout [the rebuttal video] and made no attempt to contradict the rebuttal[.]" (DE 1-2 ¶ 19).

seizure of his phone amounted to false imprisonment. Mr. Newton further claims that, "[a]s a direct result of the encounter,[6] [his] scheduled 10:00 a.m. licensing meeting collapsed and was never rescheduled." (*Id.* ¶ 27). Mr. Newton also alleges that the event organizer withdrew his interest in Mr. Newton's startups. (*Id.*). Consequently, Mr. Newton claims that "DropMagnet lost a critical commercial trajectory." (*Id.*).

On November 13, 2025, Mr. Newton initiated this lawsuit against Meta and Mr. Jones,[7] alleging seven counts: defamation per se (Count I); battery (Count II); conversion

---

[6] Plaintiff alleges that, during the event, he met Mr. Craig Shah. (DE 1-2 ¶ 38). Mr. Shah purportedly reviewed Mr. Newton's startups and claimed that he loved it and will "license it." (*Id.*). Mr. Newton and Mr. Shah then scheduled a meeting for the next morning. After his interaction with Mr. Jones, Mr. Newton himself decided not to attend the meeting. (*Id.* ¶ 43). Mr. Newton alleges that this decision as motivated by his belief that Mr. Shah was "a business associate . . . [and] accomplice" of Mr. Jones. (*Id.* ¶ 38). It is unclear to the Court what Mr. Newton meant when he alleged that Mr. Shah is an "accomplice" as the Complaint is devoid of any allegations suggesting that Mr. Shah participated in any of the purported misconduct. Nonetheless, on that basis, Mr. Newton himself decided to not attend the licensing meeting. (*Id.* ¶ 43). Plaintiff attributes his cancellation to his belief that, based on his interaction with Mr. Jones and the event organizer, the network would not do business with him unless he deleted his rebuttal video. (*Id.*). Mr. Newton does not allege that Mr. Shah cancelled the meeting or otherwise communicated with him that he intended to cancel the meeting.

[7] Mr. Newton moved for default as to Mr. Jones and the Clerk's Office twice, (DE 16 and DE 19), indicated that default could not be entered because the executed summons was not filed onto the docket. Mr. Newton did not take any further corrective action after the Clerk's Office's last indication that default was not entered against Mr. Jones. In between the non-entries of default, Mr. Newton filed a "Notice of Filing Proof of Service and Completion of Service on Defendant Reese Jones and Request for Clerk's Entry of Default," (DE 18), in which he explains that he effected "substitute service of process on [Mr.] Jones pursuant to Florida law." (*Id.* at 5). Mr. Newton claims that substitute service of process is appropriate pursuant to Fla. Stat. § 48.031(6)(a). This purported substitute service consisted of Mr. Newton leaving a summons with a UPS store clerk at a location that he believed Mr. Jones patronized. (*Id.* at 14-18). The store clerk did not provide any confirmation that Mr. Jones maintained a mailbox at the store. (*Id.*). Accordingly, this attempted service is insufficient. *See FX Grp., LLC v. Astorga*, No. 8:20-CV-468, 2021 WL 8200229, at *3 (M.D. Fla. Sept. 27, 2021), *report and recommendation adopted sub nom. FX Grp., LLC v. Vision Mgmt. & Ent., LLC*, No. 8:20-CV-468, 2021 WL 8200229 (M.D. Fla. Oct. 12, 2021) ("Under Florida law, if the only available address for a person is a private mailbox, service may be effected by 'leaving a copy of the process with the person in charge of the private mailbox,' **if the process server confirms the person to be served maintains a mailbox at that location**.") (emphasis added). In any event, Mr. Newton did not make any corrective filings after the non-entry of default. Accordingly, at this juncture, Mr. Jones is dismissed without prejudice from this action.

(Count III); false imprisonment (Count IV); tortious interference with an advantageous business relationship (Count V); intentional infliction of emotional distress (Count VI); and assault (Count VII). Meta has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) ("**Rule 12(b)(6)**").

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels, and conclusions." *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted).  Rule 12(b)(6) does not allow dismissal of a claim because a court anticipates "actual proof of those facts is impossible," but the "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In ruling on a 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that she is entitled to relief. *Twombly*, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not

akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In determining whether a complaint states a plausible claim for relief, the court draws on its judicial experience and common sense. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## III.   DISCUSSION

As noted *supra*, Mr. Jones is dismissed from this action. Accordingly, the only question before this Court is whether Meta can be held vicariously liable for the action of its purported agent, Mr. Jones. "Three agency theories may support vicarious liability: actual authority, apparent authority, and ratification." *Wilkerson v. Insureme Inc.*, No. 6:25-CV-676, 2026 WL 809589, at *2 (M.D. Fla. Mar. 24, 2026). Mr. Newton argues that Meta is subject to liability under all three of these theories. (DE 1-2 25–26). The Court considers his arguments below.

### A.   Actual Authority

"According to the Restatement (Third) of Agency, '[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1308 (11th Cir. 2017) (quoting Restatement (Third) of Agency § 2.01 (2006)); *see also First Sw. Fin. Servs., LLC v. Best Light, LLC*, No. 13-20049-CIV, 2015 WL 13777174, at *8 (S.D. Fla. Feb. 6, 2015), *report and recommendation adopted*, No. 13-CV-20049, 2015 WL

13777173 (S.D. Fla. Feb. 23, 2015) ("Actual authority is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). A plaintiff advancing a theory of vicarious liability vis-à-vis actual authority must allege: (1) the principal acknowledged that the agent would act for it; (2) the agent accepted the undertaking; and (3) the principal had control over the actions of the agent. *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1077 (11th Cir. 2003).

Here, Mr. Newton does not sufficiently allege facts to satisfy these elements. Mr. Newton avers that "[u]pon information and belief, discovery will reveal that [Mr.] Jones had actual authority from Meta to style himself as a 'Facebook Advisor' in public and to promote interests at industry events." (DE 1-2 at 25). Such conclusory allegations are insufficient.[8] *See e.g.*, *Floyd v. Endurance Am. Specialty Ins. Co.*, No. 3:23CV10244-TKW-ZCB, 2023 WL 3814041, at *5 (N.D. Fla. June 5, 2023) ("Plaintiff is not entitled to embark on a fishing expedition in discovery to try to uncover facts that he cannot plausibly allege in his complaint."); *Smith v. CH2M Hill, Inc.*, 2011 WL 13128411, at *4 (N.D. Ga. Mar. 3, 2011) ("Conclusory allegations accompanied by a claim that discovery will reveal the factual basis for the allegations are insufficient to survive a motion to dismiss."). As it stands, the Complaint does not allege that Meta acknowledged Mr. Jones as its agent or that Meta had any control over his actions.[9] A dearth of such allegations is fatal to a theory of vicarious

---

[8] Mr. Newton's conclusory statements include allegations that Mr. Jones' "torts occurred within the scope of [the purported authority granted to him by Meta], as it was motivated at least in part to serve Meta's interests." (DE 1-2 at 25).

[9] In his response, Mr. Newton points to certain actions as evidence of actual authority. For example, Mr. Jones argues that the Complaint "alleges that at the Miami event[,] [Mr.] Jones was brought onstage as a

liability premised on actual authority. *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1222 (S.D. Fla. 2011) (dismissing claim because "there is a dearth of factual allegations supporting any agency relationship"). Accordingly, Meta cannot be vicariously liable for Mr. Jones' actions on the basis of any actual authority.

      B.  Apparent Authority

"Apparent authority exists when the principal creates the appearance of an agency relationship." *Whetstone Candy Co.*, 351 F.3d at 1078. Such an appearance can be created if "the principal knowingly permits the agent to act as if the agent is authorized, or by silently acting in a manner which creates a reasonable appearance of an agent's authority, but **cannot arise from the subjective understanding of the person dealing with the purported agent**." *Id.* (citation and internal quotation marks omitted) (emphasis added); *see also MeterLogic, Inc. v. Copier Solutions, Inc.,* 126 F.Supp.2d 1346, 1355 (S.D.Fla.2000) (explaining that "apparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from the appearance created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship.") (internal quotation marks and citation omitted). In short, the principal itself must create an objective appearance of agency that a third party reasonably, and to his detriment, relies on.

---

'Facebook Advisor,' claimed he held that designation . . . and represented to Plaintiff that he was an official Meta representative with insider knowledge of the company." (DE 26 at 19). Mr. Newton further highlights that "[Mr.] Jones spoke in the first[-]person plural about Meta's practices ("What should we do . . .") immediately before the alleged torts." (*Id.*). None of these actions, however, were by Meta. The Technology Event organizers brought Mr. Jones onstage, and the other representations were made by Mr. Jones. As discussed *supra,* however, the actions of third parties are insufficient for establishing actual authority.

In this case, Mr. Newton alleges that Meta alleges that Mr. Jones lists himself out as a "Facebook Advisor" on LinkedIn and has done so since at least 2016. (DE 1-2 at 26). Mr. Newton also points out that RocketReach, a lead-generating website with contact information for professionals, lists Mr. Jones as an "Advisor @ Facebook" and provides an official meta.com email address as his contact information. (*Id.* at 25). Finally, Mr. Newton points to social media posts by the organizers of the Technology Event that describe Mr. Jones as a "Facebook Advisor." (*Id.* at 18). None of these actions, however, can be attributed to Meta: the LinkedIn profile is Mr. Jones' personal profile; RocketReach is an independent company; and the Technology Event is not affiliated with Meta.

Instead, Mr. Newton argues that Meta nonetheless created an appearance of Mr. Jones' authority by inaction. Mr. Newton claims that "Meta [] has brand-protection channels through which it can request corrections or removals of misleading affiliations on third-party platforms such as LinkedIn . . . yet it has not requested removal or correction of [Mr.] Jones' claimed "Advisor – Facebook" role on those services." (DE 1-2 at 18). Mr. Newton further highlights the fact that Mr. Jones introduced himself as a representative of Meta. (*Id.* at 9). Mr. Jones' individual decisions to style himself as a Facebook Advisor and introduce himself in that same manner, however, do not create apparent authority.[10] *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1320 (S.D. Fla. 2014) ("Only the actions or representations of the principal can create apparent authority; **the purported agent cannot create apparent**

---

[10] Relatedly, while Mr. Newton avers that Mr. Jones' conduct made him believe that Mr. Jones was a representative of Meta, Mr. Newton's subjective belief is irrelevant to this analysis. *Whetstone Candy Co.*, 351 F.3d at 1078.

**authority by his own actions or representations**.") (emphasis added). Nor is a principal's silence alone "enough to create an agency relationship based upon apparent authority." *New Process Steel, L.P. v. PH GR, Inc.*, 107 F. App'x 641, 643 (7th Cir. 2004); *see also Hossfeld v. Allstate Ins. Co.*, No. 25-1518, 2026 WL 1815908, at *7 (7th Cir. June 24, 2026) (explaining that "[b]ecause apparent authority relies on a manifestation of the principal, to create apparent authority, the principal must speak, write, or otherwise act toward a third party") (citation and internal quotation marks omitted). Instead, to create apparent authority, a principal's silence must be accompanied with actions that "create[] a reasonable appearance of an agent's authority." *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1312 (S.D. Fla. 2019). To this end, a failure to affirmatively deny an agency relationship cannot be the premise for apparent authority. *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1222 (S.D. Fla. 2011) ("As a matter of law, [a defendant's] failure to deny an agency relationship . . . cannot support a claim for agency.").

Accordingly, because Mr. Newton has failed to allege facts sufficient to show any action by Meta[11] that would suggest an agency relationship, the Court finds that there is no vicarious liability under a theory of apparent authority.

---

[11] Again, Mr. Newton's response focuses on the fact that Mr. Jones was billed out as a "Facebook Advisor" on social media advertisements without any objection or correction by Meta, despite the company's "capacity and opportunity to challenge or correct them." (DE 26 at 19). Mr. Newton offers no caselaw to suggest that a company's inaction, especially when the company also has no knowledge of the event in question, is sufficient to establish apparent authority. Plaintiff further argues that he subjectively relied on Mr. Jones' representations—especially his use of the word "we"—but, again, that subjective interpretation is immaterial to establishing apparent authority.

C. <u>Ratification</u>

Finally, Mr. Newton contends that Meta is vicariously liable because it ratified Mr. Jones' actions. (DE 1-2 at 26). According to Mr. Jones, Meta has continued to accept the benefits of Mr. Jones' "Facebook Advisor" branding and this, "coupled with [Meta's] full knowledge of his conduct and continued tolerance of [Mr. Jones' title] after notice [] constitutes implied ratification[.]" (DE 26 at 9).

Ratification, however, requires the existence of an agency relationship which, as discussed *supra*, has not been sufficiently alleged in the instant case. *See, e.g.*, Cabrera v. Gov't Emps. Ins. Co., 452 F. Supp. 3d 1305, 1321 (S.D. Fla. 2014) ("Because no agency relationship existed between Bell and GEICO, Plaintiff cannot proceed under a ratification theory."); *Irwin v. Miami-Dade Cnty. Pub. Sch.*, 06-23029-CIV, 2008 WL 2977360 at *4 (S.D. Fla. July 31, 2008) *aff'd*, 398 F. App'x 503 (11th Cir. 2010) ("A count brought under a theory of ratification requires a principal-agent relationship."); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it.") (citation and internal quotation marks omitted). Even if the Court assumed, arguendo, that Mr. Newton sufficiently alleged an agency relationship, his ratification theory is still unavailing. Mr. Newton alleges that ratification occurred on the basis of Meta's inaction. Inaction, however, is not a sufficient premise for ratification—the principal must perform *some* act of recognition or consent. *See Ward v. Casual Rest. Concepts Inc.*, No. 8:10-CV-2640, 2012 WL 695846, at *10 (M.D. Fla. Mar. 1, 2012)

(explaining that, in the agency context, "ratification cannot be presumed simply by the principal's lack of action.").

Accordingly, Mr. Newton's ratification theory is insufficient to hold Meta vicariously liable.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Meta is not vicariously liable for the actions of Mr. Jones.[12] Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss (DE 22) is **GRANTED**.

2.  Plaintiff may, if he so chooses, file an amended complaint within fourteen (14) days of the date of this Order.

3.  The Clerk of the Court is **DIRECTED** to mail a copy of this Order to Plaintiff.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 17th day of July, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[12] Because there is no vicarious liability, this Order does not address the other arguments advanced by Meta in its Motion.